[Cite as *State v. Chaney*, 2010-Ohio-1312.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 08 MA 171 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| CARL CHANEY, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Common Pleas
                             Court, Case No. 07 CR 816.

JUDGMENT:                    Reversed and Remanded.

APPEARANCES:
For Plaintiff-Appellee:       Attorney Paul J. Gains
                             Mahoning County Prosecutor
                             Attorney Ralph M. Rivera
                             Assistant Prosecuting Attorney
                             21 W. Boardman St., 6th Floor
                             Youngstown, OH 44503

For Defendant-Appellant:      Attorney Rhys Cartwright-Jones
                             42 N. Phelps Street
                             Youngstown, OH 44503

                             Carl Chaney, #A552-498
                             Belmont Correctional Institute
                             P.O. Box 540
                             St. Clairsville, OH 43950

JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Gene Donofrio

                                      Dated: March 25, 2010

DeGenaro, J.

{¶1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Appellant Carl Chaney appeals the July 31, 2008 decision of the Mahoning County Court of Common Pleas that imposed four concurrent ten-year sentences, subsequent to a jury finding of guilty on four counts of rape, and a jury finding of not guilty on three counts of rape, one count of kidnapping, and one count of aggravated burglary.

{¶2} Chaney argues that the prosecution impermissibly inquired into Chaney's post-arrest silence during trial. Chaney also presents arguments regarding the manifest weight of the evidence, inconsistent verdicts, the best evidence rule, limitation of cross-examination, and the cumulative effect of these errors. Upon review, his arguments are meritorious in part.

{¶3} The State's cross-examination of Chaney, as well as its closing comment regarding Chaney's silence after arrest and before testifying at trial was a violation of Cheney's constitutional rights. Although the State's references to Chaney's post-arrest silence were brief, they were not mere harmless error. Chaney's convictions were not otherwise against the manifest weight of the evidence. The jury was not prevented from rendering a consistent verdict, as the rape charges were sufficiently differentiated both in the trial record and in the verdict forms provided to the jury. Chaney's remaining arguments are mooted by this Court's disposition of the first assignment of error. Accordingly, the trial court's decision is reversed and remanded for a new trial.

## Facts and Procedural History

{¶4} On June 28, 2007, Chaney was indicted on nine first-degree felony counts, including one count of aggravated burglary, in violation of R.C. 2911.11(A)(1)(B); one count of kidnapping, in violation of R.C. 2905.01(A)(4)(C); and, seven counts of rape, in violation of R.C. 2907.02(A)(2)(B). Chaney was charged with committing the offenses against Debra Kuriatnyk on the evening of June 23, 2007. On July 11, 2007, Chaney entered a plea of not guilty and retained counsel.

{¶5} Both Kuriatnyk and Chaney testified that they had been involved in an intimate relationship from approximately 2002 to 2006, and that they continued to see one another casually from 2006 until the incident in 2007. The parties were dating other

people around the time of the incident.

{¶6} Kuriatnyk testified that, during the day on June 23, 2007, she was at work, and Chaney called her a few times while she was working. They had not made plans to be together that evening. Kuriatnyk finished work at 7:00 p.m., and went home to get ready to go out with her ex-sister-in-law (Pam) that evening. Kuriatnyk thought her front door had been locked, but found Chaney in her living room. At that point Kuriatnyk was wearing shorts and a shirt. Chaney seemed to be intoxicated, and stated flatly that he was going to rape her.

{¶7} Chaney pushed Kuriatnyk to the floor, removed her shorts, genitally penetrated her vagina, and stopped when his penis was no longer erect. Kuriatnyk attempted to fight him off, Chaney picked her up, threw her on the couch, and again genitally penetrated her vagina. Chaney also digitally penetrated her vagina while in the living room. Chaney picked her up, carried her upstairs, threw her on the bed, and attempted to have her perform fellatio. When Kuriatnyk refused, Chaney slapped her and threw her up against the bedroom wall. While in the bedroom, Chaney genitally and digitally penetrated Kuriatnyk's vagina, digitally penetrated her anus, and briefly performed cunnilingus. During the struggle in the bedroom, Chaney at one point choked Kuriatnyk and slammed her against a wall. Kuriatnyk testified that she was petrified and thought she was going to die.

{¶8} Kuriatnyk testified that before Chaney left, he stated to her that friends were having a party for his birthday at a nearby bar. After Chaney left, a friend of Kuriatnyk called Kuriatnyk to tell her that Chaney was at the bar saying that Kuriatnyk had performed fellatio on him for his birthday. Kuriatnyk called a friend from work, the police, and Pam. At some point after Chaney left Kuriatnyk's home, he returned to retrieve his mobile telephone. Kuriatnyk threw the mobile telephone onto the porch when Chaney returned to her home. Kuriatnyk testified that she did so because she did not want him back in the house.

{¶9} On cross-examination, Kuriatnyk was asked about her police statement. Kuriatnyk admitted that she did not include information of the sexual conduct that occurred in the living room, and instead only reported that which occurred in the bedroom.

On re-direct, Kuriatnyk stated that she could not fit all the details of the incident in the four lines of space provided on the police statement.

{¶10} Patricia Lane Fusselman testified that she was the nurse on-call at the St. Elizabeth Health Center on the night Kuriatnyk came in. Kuriatnyk first saw a triage nurse in the emergency department, and was referred to Fusselman. Fusselman repeated the details of the assault that Kuriatnyk reported to her. Fusselman described the components of a rape kit and described her physical examination of Kuriatnyk. Fusselman did not find injury to Kuriatnyk's throat, but did locate a number of small, fresh scratches on Kuriatnyk's lower back, inner thigh, and wrist. On cross-examination, Fusselman noted that the triage nurse had written that Kuriatnyk's blood pressure and pulse were within a normal range, that her pain was described as a ten out of ten, and that she was taking Tegretol. Fusselman reiterated that no physical injuries were found apart from the scratches.

{¶11} Brenda Gerardi testified that she was the forensic scientist at the Ohio Bureau of Criminal Identification and Investigation that was assigned to examine the samples from Kuriatnyk's rape kit after the forensic biologist, Chad Britton, screened the samples for biological fluid. Gerardi stated that Chaney's DNA was found in Kuriatnyk's fingernail scrapings, and his saliva was detected in samples taken from the shorts that Kuriatnyk had been wearing at the time of the incident. No semen was detected.

{¶12} Robert Mauldin testified that he was an employee for the Youngstown Police Department Crime Lab who attempted to collect a DNA sample from Chaney. Chaney refused to comply. Mauldin took pictures of the back of Chaney's upper body, and did not observe any scratches or other injury.

{¶13} Chaney then presented the testimony of Suzanne Ellis of the Youngstown Police Department, who accompanied Mauldin to interview Chaney on June 25, 2007. Ellis did not observe any scratches on Chaney's back when he removed his shirt, and did not examine any other parts of Chaney's body.

{¶14} Chaney then took the stand to testify. Chaney testified that Kuriatnyk called him repeatedly during the day on June 23, 2007 and invited him to her house. Chaney had consumed approximately four mixed drinks and less than two beers during the

afternoon. When Chaney arrived at Kuriatnyk's house after 7:00 p.m., Kuriatnyk answered the door, hugged and kissed Chaney, and wished him a happy birthday. Kuriatnyk was wearing a sports bra and a pair of jogging shorts. They sat on the couch, talked and kissed, and Kuriatnyk asked Chaney to carry her upstairs. They took each other's clothes off, and Kuriatnyk performed fellatio. They fondled each other on the bed, but Chaney was out of breath from carrying Kuriatnyk up the stairs. Kuriatnyk went downstairs to get a drink for Chaney, and brought it up to him. Chaney laid on the bed and Kuriatnyk began to talk to someone on the telephone. Chaney got dressed, said he was going to the bar, kissed Kuriatnyk on the front porch and left. Kuriatnyk wanted to take him to dinner, but Chaney declined. Chaney started to drive to his house, realized he left his mobile phone, returned to Kuriatnyk's house, and Kuriatnyk handed Chaney his mobile phone.

{¶15} Subsequent to the close of trial, instructions of law and jury deliberations, the jury returned a guilty verdict for counts six through nine and a not guilty verdict for counts one through five. On May 21, 2008, the trial court entered a judgment entry memorializing the same, and setting the sentencing hearing. On July 31, 2008, the trial court held a sentencing hearing, and imposed four concurrent ten-year sentences for the rape convictions. The trial court later filed a judgment entry and notice of duties to register as a sex offender, which Chaney refused to sign.

### References to Post-Arrest Silence at Trial

{¶16} In his first of six assignments of error, Chaney asserts:

{¶17} "The prosecution's inquiry into Mr. Chaney's post-arrest silence violated his Fifth and Fourteenth Amendment rights to remain silent."

{¶18} Chaney argues that the State impermissibly brought attention to the fact that Chaney exercised his right to remain silent after arrest up until the point that he waived his right and testified at trial, violating his Fifth and Fourteenth Amendment rights. The State concedes that its reference to Chaney's post-arrest silence was improper pursuant to this Court's recent decision in *State v. Washington*, 7th Dist. No. 08-MA-5, 2009-Ohio-2893. However, the State argues that the error was harmless.

**{¶19}** As the State has conceded error, this Court must determine whether the error was harmless beyond a reasonable doubt. Harmless error is defined as, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights[.]" Crim.R. 52(A). Any error that is harmless shall be disregarded. Id. "Whether [the] error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, at ¶62, quoting *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, at ¶78.

**{¶20}** Here, there were two questions posed regarding Chaney's silence during the State's cross-examination of Chaney. At the beginning of the State's cross-examination of Chaney, the prosecutor stated:

**{¶21}** "Q: Okay. Now, you would agree with me that this is the first time you ever made a statement about this; is that right?

**{¶22}** "A: Yes

**{¶23}** Chaney's objection was overruled, the parties conducted a sidebar discussion off the record, and the State was allowed to continue:

**{¶24}** "Q: So you would agree with me this is the first time you ever talked about this.

**{¶25}** "A: You mean out in public, yes."

**{¶26}** Chaney later renewed his objection, and moved for a mistrial based on the above exchange. The trial court decided that because the State did not make a more specific reference to Chaney's post-arrest silence, such as a question about Chaney's assertion of his *Miranda* rights or his failure to talk to the police, the State's reference was admissible. The trial court overruled Chaney's objections, and did not provide any curative instructions to the jury at the time of questioning.

**{¶27}** During the State's rebuttal closing argument, counsel stated: "They said that [Kuriatnyk] * * * didn't know the times [of the events on June 23, 2007]. Do you know the times of everything that occurred, what time was this, what time was that? Well, the

defendant took the stand and he knew the times. But he's had a year to think about it. It was the first time we heard his statement, the first time we heard his side. He's had a year to come up with his story."

{¶28} The trial court overruled Chaney's objections, did not provide any curative instructions at that time, and did not provide any instructions relating to Chaney's right to remain silent during its instructions of law at the end of trial. Chaney later renewed his objection and motion for mistrial, which the trial court again overruled.

{¶29} As both parties state, the United States Supreme Court has held that the State's use of a defendant's post-arrest, post-*Miranda* silence as a means of impeaching the defendant's testimony at trial violates the defendant's right to due process under the Fourteenth Amendment. *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. See, also, *Wainwright v. Greenfield* (1986), 474 U.S. 284, 292, 106 S.Ct. 634, 88 L.Ed.2d 623 ("[I]t is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony."). Courts look upon any comment by a prosecutor on the post-arrest silence of a defendant with extreme disfavor because they raise an inference of guilt from the defendant's decision to remain silent. *State v. Thompson* (1987), 33 Ohio St.3d 1, 4, 514 N.E.2d 407; *State v. Rogers* (1987), 32 Ohio St.3d 70, 512 N.E.2d 581.

{¶30} " '(W)hen a person under arrest is informed, as Miranda requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony * * *. Surely [the defendant] was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from Miranda warnings that this would not be the case.' " *Doyle* at 619, quoting *United States v. Hale* (1975), 422 U.S. 171, 182-183, 95 S.Ct. 2133, 45 L.E.2d 99 (White, J., concurring).

{¶31} However, there are some exceptions when such improper references will not cause reversible error. When the record discloses that the defendant in fact waived his *Miranda* rights or otherwise spoke after his arrest, such error might not be found. See, e.g., *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31; *State v. Carter*, 7th Dist. No. 06-MA-187, 2009-Ohio-933; *State v. Kolb*, 7th Dist. No. 07 MA 80, 2008-Ohio-5048; *State v. Jenkins* (March 14, 2000), 7th Dist. No. 98-502 CA. When the trial record indicates that the defendant opened the door on the issue of his post-arrest, post-*Miranda* silence, the error can be waived. See, e.g., *State v. Stragisher*, 7th Dist. No. 03 CO 13, 2004-Ohio-6797; *State v. Eason*, 7th Dist. No. 02 BE 41, 2003-Ohio-6279. Although the foregoing are the primary reasons this Court has used to find no error for this issue, the record does not indicate that these exceptions apply to the case at hand. The error was not harmless for this reason.

{¶32} The State argues that they are permitted to inquire about Chaney's pre-arrest silence, pursuant to the Ohio Supreme Court's decision in *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335. *Leach* explained that the State is prohibited from using a defendant's pre-arrest silence as substantive evidence of guilt, but the State may use a defendant's pre-arrest silence for impeachment purposes in the event that the defendant chooses to testify. Id. Here, the State argues that because they did not specifically ask about Chaney's pre-arrest versus his post-arrest silence during cross-examination, the error is harmless. However, a nonspecific inquiry about a defendant's silence prior to his trial testimony at best still encompasses an inquiry about the defendant's post-arrest silence, which remains impermissible. The error was not harmless for this reason.

{¶33} The State also argues that the error is harmless if the relative strength of the other evidence against the defendant is great, or if the reference to the defendant's post-arrest silence is fleeting. Chaney counters that the State's impeachment based on post-arrest silence was fundamentally unfair, and that the questions regarding Chaney's silence were repeatedly posed.

{¶34} If there is overwhelming evidence of the defendant's guilt, an improper

reference to the defendant's post-arrest silence may be harmless beyond a reasonable doubt. *Thompson*, supra, at 4-5; *State v. Moreland* (1990) 50 Ohio St.3d 58, 64-65, 552 N.E.2d 894. This justification is not applicable to the case at hand. Although, as discussed infra, Chaney's convictions were not against the manifest weight of the evidence, the State did not present overwhelming evidence against Chaney. Witness testimony and therefore witness credibility played an extremely large role in Chaney's case. Additionally, there were no eye-witnesses apart from Chaney and Kuriatnyk, and the DNA evidence can be viewed as directly corroborating only one of the four rape counts. It does not appear to this Court that "the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *Moreland*, supra, quoting *State v. Williams* (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, paragraph six of the syllabus. Because credibility played such a large role in this case, we cannot presume that an improper impeachment of Chaney's credibility was harmless beyond a reasonable doubt. The State's impropriety was not harmless for this reason.

{¶35} Additionally, if the reference to a defendant's post-arrest silence or exercise of his *Miranda* rights is brief, isolated, and followed by a curative instruction by the trial court, the error might not be reversible. *State v. Treesh*, 90 Ohio St.3d 460, 479-480, 2001-Ohio-4, 739 N.E.2d 749. However, the case at hand is distinguishable from *Treesh*. The facts as described by the Ohio Supreme Court in *Treesh* indicate that the State impermissibly inquired into the defendant's post-arrest silence, but did not return to the issue during closing arguments. Moreover, the trial court in *Treesh* provided a curative instruction to the jury after the State's impropriety, and this instruction was the main factor upon which the Ohio Supreme Court based its decision. Id. At 480 ("We presume that the jury followed the court's instructions including instructions to disregard testimony."). See, also, *State v. Garner*, 74 Ohio St.3d 49, 59, 1995-Ohio-168, 656 N.E.2d 623 ("A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge."). Here, the State made reference to Chaney's post-arrest silence during cross-examination, and also returned to the issue during closing arguments. The trial court gave no curative instructions regarding the impermissible references to Chaney's post-arrest silence during cross-examination, closing arguments, or during its instructions of

law prior to deliberations. We therefore do not find that the error was harmless based on the authority of the Ohio Supreme Court's decision in *Treesh*.

**{¶36}** Some of our sister Districts have decided that harmless error can be found if the State's improper references are limited, or if the inference of a defendant's guilt from the silence was not stressed by the State to the jury. See, e.g., *State v. Thomas*, 1st Dist. No. C-010724, 2009-Ohio-971, at ¶18; *State v. King*, 11th Dist. No. 2003-L-177, 2005-Ohio-4656, at ¶44; *State v. Welch*, 3d Dist. No. 16-06-02, 2006-Ohio-6684, at ¶13; *State v. Ervin*, 8th Dist. No. 80473, 2002-Ohio-4093, at ¶65. However, this District does not have such an established tendency to frame the analysis in this manner or to decide *Doyle* violations the same way. See *State v. Ifft* (Mar. 23, 1989), 7th Dist. No. 87 C.A. 166 (finding a clear violation of *Doyle* in a short series of questions regarding the defendant's failure to "tell anybody what had happened" prior to his testifying at trial).

**{¶37}** In *Washington* this Court found error on facts very similar to the case at hand. During his trial, Washington chose to testify in his defense. During cross-examination, the prosecutor asked Washington, "how many times did you go over the testimony that you just gave us here today with your attorney?" *Washington* at ¶64. After Washington's response, the prosecutor posed the question, "[a]nd before today you've never said anything about what you testified to anyone other than your attorney[?]." Id. at ¶66. After Washington's affirmative response, the prosecutor followed up by asking "[s]o you're aware this is the first time I'm hearing any of this?" Id. at ¶68. The defendant failed to object to the prosecution's questions, thus the issue was before this court under a plain error standard of review. Id. at ¶57. This Court noted that all of the prosecution's questions in the above exchange could have merely been an attempt to imply to the jury that Washington's attorney had coached his testimony in order to keep it consistent. Id. at ¶72. However, this Court noted that the prosecution's stress on Washington's failure to have told *anyone* about his defense could constitute a reference to Washington's post-arrest silence. Id. at ¶73. This Court concluded that the prosecutor in *Washington* "crossed the line" and impermissibly inquired into Washington's pre-testimony post-arrest silence by asking the question, "before today you've never said anything about what you testified to anyone other than your attorney[?]" Id. at ¶74.

**{¶38}** However, because this Court reversed Washington's conviction on other grounds, this Court did not determine whether the error rose to the level of plain error. *Washington* at ¶75. In a similar case, although a single reference in closing arguments to the defendant's post-arrest silence was not found to constitute plain error, the Ohio Supreme Court noted that they "cannot condone even an isolated reference to a defendant's post-arrest silence." *State v. Rahman* (1986), 23 Ohio St.3d 146, 153, 23 OBR 315, 492 N.E.2d 401. Such admonitions under a plain error standard of review do not necessarily control our decision today, but do support the contention that any reference to a defendant's post-arrest silence should be viewed with extreme disfavor. Under the present and much more stringent harmless error analysis, this disfavor holds much more sway.

**{¶39}** Remaining consistent with our analysis in *Washington* and decision in *Ifft*, we cannot find that the State's improper reference to Chaney's post-arrest silence was harmless beyond a reasonable doubt. Although the State's improper questioning was quite brief during cross examination, the State returned to the issue in order to stress Chaney's lack of credibility during closing statements, and the trial court did not provide a curative instruction at any point.

**{¶40}** Chaney additionally argues that the State further impermissibly inquired about his silence by bringing attention to the fact that Chaney had not requested access to the DNA evidence in order to perform his own tests. As the State correctly points out, the State is permitted to make reference to a defendant's failure to offer particular evidence in support of its case, and such a reference does not constitute an inquiry into a defendant's post-arrest silence. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶251; *State v. Collins*, 89 Ohio St.3d 524, 527-528, 2000-Ohio-231, 733 N.E.2d 1118; *State v. Williams* (1986), 23 Ohio St.3d 16, 20, 23 OBR 13, 490 N.E.2d 906. Given this established precedent, this portion of Chaney's argument does not have merit.

**{¶41}** Given the foregoing, Chaney's first assignment of error is meritorious in part.

### Defective Indictment and Improper Jury Instructions

**{¶42}** In his third assignment of error, Chaney asserts:

{¶43} "The case, having proceeded on an indictment and jury instructions that rendered no possibility of a consistent verdict, effects a case of plain error under Crim.R. 52."

{¶44} Where an indictment does not sufficiently specify the counts against a defendant, and differentiation between multiple counts is not discernible from the trial record, the potential double jeopardy issues would cause the defendant's convictions to be vacated for a failure of due process. See *Valentine v. Konteh*, (C.A.6, 2005), 395 F.3d 626; *State v. Tobin*, 2d Dist. No. 2005 CA 150, 2007-Ohio-1345, at ¶8-10. Even though this Court is reversing and remanding Chaney's case on other grounds, this assignment of error must still be addressed in order to preserve Chaney's right to be free from double jeopardy. See *State v. Alexander*, 7th Dist. No. 03 CA 789, 2004-Ohio-5525, at ¶36, citing *State v. Lovejoy*, 79 Ohio St.3d 440, 1997-Ohio-371, 683 N.E.2d 1112.

{¶45} The record reveals that the indictment charged Chaney with seven identical instances of sexual conduct with no differentiation between them. Chaney does not raise issue with the indictment on the grounds of adequate notice, but only regarding double jeopardy: Chaney contends that there is no way to determine which four of the counts received guilty verdicts from the jury.

{¶46} Chaney correctly concedes that our examination is limited to a plain error standard of review, as Chaney failed to raise the issue in the proceedings below. Crim.R. 30(A); Crim.R. 52(B); *State v. Hanna,* 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, at ¶84. The doctrine of plain error "is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 227, 4 OBR 580, 448 N.E.2d 452.

{¶47} Apart from a generic reference to constitutional law protections from double jeopardy, Chaney solely relies on *State v. Rupp*, 7th Dist. No. 05 MA 166, 2007-Ohio-1561 to support his argument. An issue arose in *Rupp* because the indictment did not distinguish between two rape counts, and "neither the instructions nor the verdicts state[d] which count was for vaginal rape and which count was for oral rape." Id. at ¶57. The

case at hand is distinguishable, because the verdict forms state the type of sexual conduct as well as the location where the conduct occurred. The verdict forms for the rape counts stated as follows:

{¶48} "VERDICT FORM COUNT 3 RAPE (Penis – vaginal / living room floor)"

{¶49} "VERDICT FORM COUNT 4 RAPE (Penis – vaginal / living room couch)"

{¶50} "VERDICT FORM COUNT 5 RAPE (Digital – vaginal / downstairs)"

{¶51} "VERDICT FORM COUNT 6 RAPE (Penis – vaginal / upstairs)"

{¶52} "VERDICT FORM COUNT 7 RAPE (Digital – vaginal / upstairs)"

{¶53} "VERDICT FORM COUNT 8 RAPE (Digital – anal / upstairs)"

{¶54} "VERDICT FORM COUNT 9 RAPE (Cunnilingus / upstairs)"

{¶55} Because each count charged against Chaney was differentiated in the verdict forms given to the jury, it was not impossible for the jury to reach a consistent verdict. For this reason alone, Chaney's argument is meritless.

{¶56} Moreover, differentiation between the seven rape counts against Chaney was discernible from the trial record. According to Kuriatnyk's testimony at trial, Chaney entered Kuriatnyk's house, pushed her to the floor, removed her shorts, genitally penetrated her vagina, and stopped when his penis was no longer erect. After a physical struggle, Chaney threw her on the couch, and again genitally penetrated her vagina. Chaney also digitally penetrated her vagina while in the living room. Chaney then picked her up, carried her upstairs to the bedroom, genitally and digitally penetrated Kuriatnyk's vagina, digitally penetrated her anus, and briefly performed cunnilingus. Because Kuriatnyk testified with sufficient specificity as to seven different acts of sexual conduct, each one of the seven counts was differentiated in the record, and it was not impossible for the jury to reach a consistent verdict.

{¶57} Contrary to Chaney's argument, it was possible to determine which of the four rape counts received guilty verdicts from the jury. No plain error occurred in regards to the identification of each individual act of rape alleged against Chaney. Accordingly, Chaney's third assignment of error is meritless.

## Remaining Assignments of Error

{¶58} In his second, fourth, fifth and sixth assignments of error, Chaney asserts, respectively:

{¶59} "The manifest weight of the evidence supported acquittal."

{¶60} "The trial court erred in allowing testimonial descriptions of records without allowing admission of the records themselves."

{¶61} "The trial court erred in disallowing cross examination relative to the victim's psychological condition, and trial counsel was ineffective for failing to investigate the same."

{¶62} "Multiple instances of error, combined, caused reversible error in Mr. Chaney's case."

{¶63} Given our disposition of Chaney's first assignment of error, these remaining four assignments of error are rendered moot, and this Court need not address them. App.R. 12(A)(1)(c).

{¶64} In conclusion, the State's improper references to Chaney's post-arrest silence violated Chaney's constitutional rights. The error is not harmless beyond a reasonable doubt, as the State committed this violation both during cross-examination and closing arguments and the trial court did not provide a curative instruction at any point. Chaney's remaining arguments are meritless or mooted by this Court's resolution of the first assignment of error. Accordingly, the judgment of the trial court is reversed and this cause is remanded for a new trial.

Vukovich, P.J., concurs.

Donofrio, J., concurs.