[Cite as *State v. Dorff*, 2023-Ohio-3424.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

CHARLES E. DORFF,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 CO 0044**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2021 CR 589

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino*, Prosecuting Attorney, *Atty. Shelley M. Pratt*, Assistant Prosecuting Attorney, Columbiana County Prosecutor's Office, 135 South Market Street, Lisbon, Ohio 44432 for Plaintiff-Appellee and

*Atty. Aaron M. Meikle*, 173 West Market Street, Warren, Ohio 44481 for Defendant-Appellant.

Dated:  September 21, 2023

**Robb, J.**

{¶1}   Appellant, Charles E. Dorff, appeals the October 14, 2022 judgment convicting him of aggravated possession of drugs following a jury trial.   Appellant contends the trial court violated his constitutional rights by failing to instruct the jury about an essential element of the offense.   He also claims the prosecutor violated his constitutional rights based on his repeated reference to Appellant's post-arrest silence. We affirm.

<u>Statement of the Case</u>

{¶2}   Appellant was arrested by secret indictment and charged with two counts: aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), a fourth-degree felony, and aggravated possession of drugs, methamphetamine, in violation of R.C. 2925.11(A), a fifth-degree felony.  (November 17, 2021 Indictment.)  Appellant entered a not guilty plea.  The state subsequently dismissed the drug trafficking charge and the attendant forfeiture specification.  The parties exchanged discovery, and the case was heard by a jury on October 11, 2022.

{¶3}   During voir dire, defense counsel initiated the following exchange with one of the potential jurors:

MR. KING:  And if my client elects not to testify, would you speculate as to why, or would you want to know the – why he didn't testify?

MS. CABLE:  I would probably want to know why he didn't testify, yes.

MR. KING:  Okay. I appreciate that.  I guess it's the old you want to hear both sides of the story?

MS. CABLE:  Correct.

MR. KING:  And in the – in the criminal justice system, you may not hear the other side of the story, the Defendant's side of the story.  Is that going to cause you some problems in regards to sorting out or wondering, again, why he's not - - why he didn't testify?

MS. CABLE:  No.

MR. KING:  Would you think the fact that he didn't testify, would he be guilty then?

<u>Case No. 22 CO 0044</u>

MS. CABLE:  No.

(Tr. 80-81.)

**{¶4}**  The state's evidence included the testimony of Detective Keith Hildebrand, a former Columbiana County Drug Task Enforcement Officer.  Hildebrand testified the task force had received tips that drugs were being sold from Appellant's home on East Lake Road in Lisbon, Ohio.  Thus, they used a confidential informant to make a controlled drug purchase during which both Appellant and his son Dustin were present in January of 2021.  The informant purchased methamphetamine.  After the purchase, the task force executed a search warrant at the residence.  They breached the door to prevent the destruction of evidence.  (Tr. 106-118.)

**{¶5}**  Appellant was the only person home at the time of the search and was laying on the couch.  The bedroom that belonged to Appellant's son did not contain illegal drugs.  However, methamphetamine was found in the bedroom determined to be Appellant's.  This room also contained burnt pipes and a box of drug paraphernalia.  The substance, later confirmed to be methamphetamine, was found in one of the nightstand drawers.  It was in a baggie in a gold container.  Appellant's license was also located in this same nightstand.  (Tr. 123-131.)

**{¶6}**  During the search, Appellant's son was returning home, and the officers found additional drugs outside in the yard near where he was located.  Dustin was charged with possession of these drugs and was convicted before Appellant's trial commenced.  (Tr. 138-147.)

**{¶7}**  At the close of the state's evidence, counsel reviewed the jury instructions out of the jury's presence.  Defense counsel requested certain instructions be added because Appellant was going to testify, and the court agreed.  No other objections or discussions were made by either side about the jury instructions.  (Tr. 155-156.)

**{¶8}**  Appellant testified on his own behalf.  He acknowledged he was living in a three-bedroom trailer on East Lake Road with his son Dustin at the time of the charges.  He was the only one home when police conducted the raid.  Appellant said his son had a girl spend the night the evening beforehand.  They stayed in Appellant's bedroom since it had a television.  Appellant slept on the couch.  (Tr. 158-162.)

**{¶9}** Appellant acknowledged he had a prior drug possession conviction. However, Appellant said the gold tin containing drugs did not belong to him, and it "had to" belong to his son. His son was in prison at the time of trial. Appellant said the girl with his son was named Carrie, and the drugs would not have belonged to her. Appellant also acknowledged that the paraphernalia, the scale, and pipe found in his home belonged to him, but he denied the drugs were his. He admitted to having a drug abuse problem. (Tr. 166-171.)

**{¶10}** Appellant was asked about the task force's search of his home and their investigation on direct examination. Appellant's attorney asked him:

Q. Now, did any members of the drug task force confront you with anything that they found or ask you about anything that you [sic] found, then?

A. No. They just brought it out and the other guy wrote down which room it was found in and what it was.

Q. Okay. No questioning of you as to any of these items?

A. No.

Q. Did you try to attempt to volunteer anything to them in regard to anything that was found in the house?

A. No, because I didn't actually know what they were finding. They just wrote it down and, you know, put it in an evidence bag.

(Tr. 164.)

**{¶11}** Detective Hildebrand was called as a rebuttal witness by the state. He was asked about the night of the search by the prosecutor:

Q. Detective, calling your attention back to the time of the execution of the search warrant on January 6th of 2021, do you recall if and how this Defendant was detained during the execution of that warrant?

A. No.

Q. Okay. Would he have been detained?

A. Yes.

Q. Okay. Did you have any contact with him?

A. I believe they sat in the kitchen.

Case No. 22 CO 0044

Q. Okay.  Did he ever offer to make any statement to officers?

A. I don't remember.

Q. Okay.  Did he ever offer to make any statement to you?

A. I don't remember.

Q. Okay.  Did he suggest that those drugs - -  to your knowledge, did he ever suggest that the drugs that were found in his room were not his?

A. No.

* * *

Q. Okay.  Since the time of this incident * * * , has he ever made contact with you or any agents at the drug task force?

A. Not that I'm aware of.

Q. Okay.  And has he ever essentially made any statement, to your knowledge, to anybody that those drugs were not his?

A. Not that I'm aware of.

(T. 174-75.)  During this line of questioning, Appellant's trial counsel objected once, contending the prosecutor had repeatedly asked the same question, contending it was "asked and answered."  But the trial court overruled the objection.  Defense counsel did not object on constitutional grounds or assert the state was improperly commenting on Appellant's right to remain silent at this juncture.  (Tr. 174.)

{¶12}  In the prosecutor's closing argument, the state argued in part that despite the passage of time after his arrest and before his trial, this is the first time they learned about Appellant's alleged defense.  The prosecutor stated in part:  "We did hear him take the stand and he submitted a defense.  This is the first time that we've heard that defense here today.  I think it has been approximately 643 days since the date of this offense on January 6th of 2021.  This is the first time that we're hearing any defense for this charge." (Tr. 179-80.)

{¶13}  Appellant's trial counsel objected, stating:  "Your Honor, I am going to object as to that.  It infers the Defendant had something to do with the prosecutor, and that's just not the law, Judge."   The judge overruled his objection, indicating it was not evidence and only argument.  (Tr. 180.)   The prosecutor then immediately thereafter raised the issue during his closing argument, stating:  "You heard  * * * Detective Hildebrand * * *

Case No. 22 CO 0044

talk about this.  To his knowledge, he's never made any attempt to clear the record that this - - this wasn't his drugs, until today.  [sic]  And that's why we're here today, for that little package of meth that they found * * * in the Defendant's nightstand."  (Tr. 180-181.)

**{¶14}** The prosecutor also commented on the lack of Appellant's witnesses and evidence supporting his testimony.  The prosecutor pointed out Appellant's failure to have his son and his son's girlfriend testify, and at this point, defense counsel objected contending the state was commenting on Appellant's constitutional rights.  The trial court overruled the objection, noting the state was commenting on the lack of testimony corroborating Appellant's version of the events.  (Tr. 183-184.)

**{¶15}** Appellant was convicted of the sole count and was sentenced to twelve months in prison.  (October 14, 2022 Judgment.)  He raises two assignments of error on appeal.

<u>Assignment of Error One:  Jury Instructions</u>

**{¶16}** Appellant's first assignment asserts:

"The trial court violated Charles Dorff's constitutional rights and plainly erred by failing to instruct the jury on every element of the offense charged. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution; R.C. 2945.11; Crim.R. 30; Crim.R. 52; *State v. Bridgeman*, 51 Ohio App. 2d 105 (1977); *Morgan v. State*, 48 Ohio St 371, paragraph three of the syllabus (1891); *State v. Headley*, 6 Ohio St.3d 475 (1983); Ohio Jury Instructions, CR Section 525.11 (Rev. Dec. 10, 2016); T. 201-02."

**{¶17}** Jury instructions are generally left to the discretion of the trial court, and thus, we ordinarily apply the abuse of discretion standard when reviewing a decision not to instruct the jury in a certain manner.  *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989); *State v. Cain*, 10th Dist. Franklin No. 06AP-1252, 2007-Ohio-6181, ¶ 7.  Here, however, there was no objection to the jury instruction that Appellant challenges on appeal, and as such, he waived all but plain error.

**{¶18}** Crim.R. 30(A) states "a party may not assign as error [on appeal] the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict * * *."  However, appellate courts may notice "[p]lain errors or defects

<u>Case No. 22 CO 0044</u>

affecting substantial rights * * * although they were not brought to the attention of the [trial] court." Crim. R. 52(B).

**{¶19}** Appellate courts should notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Plain error is an obvious deviation from a legal rule that affects the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). The appellant must show the outcome would have been different absent the plain error. *Id.*

**{¶20}** As stated, Appellant was charged and convicted of aggravated possession of drugs in violation of R.C. 2925.11(A), a fifth-degree felony. Thus, the state had the burden of proving that he knowingly had a controlled substance, i.e., methamphetamines, in his possession. R.C. 2925.11.

**{¶21}** Here, Appellant contends the court erred by failing to require the jury to consider and decide if the state established venue. However, venue is not a material element of any offense charged; the elements of the offense charged are separate and distinct. *State v. Jackson,* 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 143. Notwithstanding, the state must prove venue beyond a reasonable doubt unless it is waived by the defendant. *Id.*, citing *State v. Headley,* 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983).

**{¶22}** As authority, Appellant relies on the applicable standard Ohio Jury Instruction for aggravated possession of drugs, 2 CR Ohio Jury Instructions 525.11, which includes the county and state as facts of the offense. He claims because the jury was *not* instructed on venue and did not determine whether this element was established beyond a reasonable doubt, the court necessarily invaded the province of the jury when it convicted him.

**{¶23}** The Ohio Supreme Court in *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 148-150, addressed this precise issue under a plain error standard of review. After listing the evidence presented at trial establishing the location of the offenses and venue, the *Were* court found no plain error. *Id.*

**{¶24}** Like *Were*, the state established the instant offense occurred in Columbiana County, Ohio. Detective Hildebrand testified that the search warrant was executed at

Appellant's residence located in Columbiana County. He also testified that the controlled drug buy occurred at Appellant's home in Lisbon. (Tr. 109-110, 118.) And although Appellant did not give the precise address of his home at the time of the search, he confirmed he lived on East Lake Road, which is the same street referred to by Hildebrand in his testimony. (Tr. 158-159.) There was no evidence to the contrary, and no indication Appellant resided in another county or state.

**{¶25}** Based on the foregoing, Appellant's first assigned error lacks merit and is overruled.

Assignment of Error Two: Right to Remain Silent

**{¶26}** Appellant's second assigned error asserts:

"The prosecution's inquiry into and continued references to Mr. Dorff's post-arrest silence violated his Fifth and Fourteenth Amendment rights to remain silent. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution; Crim.R. 30; Crim.R. 52; *State v. Chaney*, 2010-Ohio-1312 (7th Dist.); *State v. Washington*, 2009-Ohio-933 (7th Dist.); *Doyle v. Ohio*, 426 U.S. 610 (1976); *State v. Rahman*, 23 Ohio St.3d 146 (1986); T. 174-75; 179-80."

**{¶27}** When reviewing a prosecutor's alleged misconduct and allegedly improper remarks, we must consider whether the prosecutor's statements were improper and if those remarks affected the defendant's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883 (1984). Even if the remarks were improper, reversal is not warranted unless the conduct complained of deprived the defendant of a fair trial. *State v. Fears*, 86 Ohio St.3d 329, 332, 715 N.E.2d 136 (1999). Thus, upon reviewing the context of the entire trial, if it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments, then the comments were harmless. *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121. "The touchstone of this analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940 (1982).

**{¶28}** The failure to object to alleged prosecutorial misconduct waives all but plain error. *State v. Hanna,* 95 Ohio St.3d 285, 2002-Ohio-2221, ¶ 77, 84. And as stated under Appellant's first assignment of error, appellate courts should only recognize plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest

miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶29}** "[I]t is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony." *Wainwright v. Greenfield*, 474 U.S. 284, 292, 106 S.Ct. 634 (1986). Thus, the state's "use of a defendant's post-arrest, post-*Miranda* silence as a means of impeaching the defendant's testimony at trial violates the defendant's right to due process under the Fourteenth Amendment." *State v. Chaney*, 7th Dist. Mahoning No. 08 MA 171, 2010-Ohio-1312, ¶ 29, citing *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240 (1976). Comments by the prosecution about a defendant's post-arrest silence are extremely disfavored since such comments infer the defendant is guilty based on his or her invocation of their right to remain silent. *Chaney, supra*, citing *State v. Thompson*, 33 Ohio St.3d 1, 4, 514 N.E.2d 407 (1987).

**{¶30}** There are, however, certain exceptions to this rule. One exception is when defense counsel elicits testimony about a defendant's silence, such that the defense "opens the door" to the issue for the state. The rule in *Doyle, supra*, "does not apply when *defense counsel* raises the defendant's post-arrest silence." (Emphasis sic.) *State v. Hankison*, 4th Dist. Scioto No. 09CA3326, 2010-Ohio-4617, ¶ 136; *State v. Reed*, 10th Dist. Franklin No. 08AP-20, 2008-Ohio-6082, ¶ 21-23 (no constitutional issue where the defense opened the door on post-Miranda silence, and the elicitation of information about the defendant's post-arrest silence was trial tactics); *State v. Eason*, 7th Dist. Belmont No. 02 BE 41, 2003-Ohio-6279, ¶ 133 (defense counsel first raised the issue as a matter of strategy).

**{¶31}** As alleged by Appellant, the state repeatedly commented on Appellant's decision to remain silent. However, in the context of the whole trial, it is evident the state's rebuttal testimony and its closing arguments were in response to defense trial strategy. Defense counsel foreshadowed the issue during voir dire when he asked a juror about a defendant's decision to remain silent. Then on direct examination, defense counsel asked Appellant about the officers' *lack* of questioning of him about the drugs found and why Appellant did not volunteer his explanation to them in an apparent attempt to bolster his testimony.

Case No. 22 CO 0044

**{¶32}** Thus, the defense opened the door for the state to counter with evidence and arguments about Appellant's silence. Further, we should also note the state is generally permitted to comment on the lack of evidence supporting a defendant's theory of the case. *Chaney*, *supra*, at ¶ 40.

**{¶33}** In isolation, the state's evidence and arguments are wholly improper comments on Appellant's post-arrest silence. However, because the defense elicited Appellant's testimony in this regard and employed this defense strategy, we find no error.

## Conclusion

**{¶34}** Based on the foregoing, Appellant's assignments of error lack merit and are overruled. The trial court's decision is affirmed.


Waite, J., concurs.

Hanni, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**