**[Cite as *State v. Capps*, 2026-Ohio-1185.]**

## IN THE FIFTH DISTRICT COURT OF APPEALS
## PERRY COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. 25-CA-00008 |
| Plaintiff - Appellee | Opinion and Judgment Entry |
| -vs- | Appeal from the Perry County Court of Common Pleas, Case No. 25-CR-0008 |
| DONALD CAPPS | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: March 31, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; David M. Gormley, Judges

**APPEARANCES:** Terry J. Rugg, Perry County Prosecuting Attorney, for Plaintiff-Appellee; April F. Campbell, Campbell Law, LLC, for Defendant-Appellant.

*Hoffman, J.*

{¶1} Defendant-appellant Donald Capps appeals his convictions and sentence entered by the Perry County Court of Common Pleas, on two counts of felonious assault and two attendant firearm specifications, following a jury trial. Plaintiff-appellee is the State of Ohio. We affirm the trial court.

STATEMENT OF THE CASE AND FACTS

{¶2}   On August 30, 2024, the Perry County Grand Jury indicted Appellant on one count of felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree; and one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree.  Each count carried an attendant firearm specification pursuant to R.C. 2941.145.  Appellant appeared before the trial court for arraignment on September 12, 2024, and entered a plea of not guilty to the charges. On October 16, 2024, Appellant filed a Notice of Self-Defense, advising he would be presenting evidence to establish at the time of the offense he was acting in self-defense or defense of others.

{¶3}   The matter proceeded to jury trial on May 29, 2025.  The following evidence was adduced at trial.

{¶4}   At approximately 4:40 p.m. on July 13, 2024, Teresa Bly, Appellant's wife, called 9-1-1 and advised the operator Toni Capps, their daughter, was attempting to get into the residence and had broken three windows in the process.  Bly called 9-1-1 a second time and told the operator Ms. Capps had broken another window.  Bly also indicated Ms. Capps was on the ground, bleeding. Because officers were delayed in responding, Perry County Sheriff's Office dispatcher Stacie Hinkle contacted Bly at 4:53 p.m. for an update on the situation. At 4:57 p.m., Appellant called 9-1-1, stating he had shot his daughter because she had broken a fifth window.

{¶5}   Deputy Austin Wamack with the Perry County Sheriff's Office was field training with Sergeant Aaron Wolfe when they were dispatched to Appellant's residence at 7267 State Route 345, New Lexington.  As the officers approached the residence, they "heard a shotgun rack twice." Trial Transcript, p. 155.  The officers then observed Ms. Capps lying on the ground and Appellant standing on a ladder, holding a shotgun.  Deputy

Wamack provided medical attention to Ms. Capps, who was unconscious, until EMS arrived.

**{¶6}** New Lexington Police Officer Brianna Miller was also dispatched to Appellant's residence on July 13, 2024. Officer Miller was advised a female was breaking windows at the house, the situation had escalated, and the female had been shot. Upon arriving at the scene, Officer Miller saw Appellant had been detained and proceeded to help administer first aid to the female.

**{¶7}** Sergeant Aaron Wolfe responded to Appellant's residence with Deputy Wamack. When the officers arrived at the scene, Sergeant Wolfe heard the unloading of a pump action shotgun. Sergeant Wolfe and Deputy Wamack made their way around the side of the house and immediately observed Toni Capps lying on the ground "with an obvious birdshot wound to the left side of her body, the back." *Id*. at p. 206. Sergeant Wolfe asked Appellant what was going on. Initially, Appellant responded appropriately, but quickly became agitated and had to be detained.

**{¶8}** Perry County Sheriff's Office evidence technician Dana Wilson was called to the scene. Wilson collected a 20-gauge shotgun, a spent shotgun shell, wadding from the shell, two unused 20-gauge rounds, and a bottle of water. Wilson located blood in different areas around the property, including beyond the tree line on the side yard, inside the laundry room, and on the broken window leading into the laundry room. She also located a 2 x 4 board under a broken window. Wilson photographed the scene and each piece of evidence in its location at the scene.

**{¶9}** Callie Baker was asleep on the couch when her boyfriend woke her up after hearing shots coming from across the street. Baker and her boyfriend watched from an upstairs window as the events unfolded. Baker observed Appellant holding a gun and his

daughter laying on the ground in the yard. Toni Capps was crawling around, asking for help and water.  Baker heard Appellant tell Ms. Capps he had called for help and to crawl toward the water bottle he had thrown in the opposite direction.  Ms. Capps crawled toward the house.  Appellant continued to hold the gun.

{¶10} Ezra Dupler was upstairs in the home he shared with Baker when he heard what sounded like something breaking. Dupler proceeded downstairs. When he reached the landing, he looked out the front window and saw a female on the ground and Appellant, holding a shotgun, standing over her. The female was laying "right beside the road, kind of in between the two trees that were in the yard." *Id.* at p. 281.  Dupler took a photo of the female on the ground, which was time-stamped 4:42 p.m.  Dupler continued to watch and observed the female crawl toward the house, coming to rest by a large tree. Dupler took another photo, which was time-stamped 4:57 p.m.  Dupler heard the female ask for help and water.  Paramedics arrived soon thereafter.

{¶11} Toni Capps lived in a camper on the State Route 345 property owned by her parents, Appellant and Bly.  Ms. Capps was working at the Panther, a restaurant in New Lexington, Ohio, on July 13, 2024.  Ms. Capps had consumed three of four alcoholic beverages, but did not feel impaired.  She did, however, not feel well and had Appellant and Bly pick her up early.  An argument ensued between Ms. Capps and her parents during the ride home.  When they arrived at 7267 State Route 345, Ms. Capps intended to get her daughter, who was in the house, and return to their camper to settle in for the evening.  Appellant and Bly would not allow Ms. Capps to see her daughter.  The argument escalated. Bly punched Ms. Capps in the face, forced her to the ground, and continued to punch her in the face. Ms. Capps bit Bly in order to get Bly off of her.  Bly retreated into the house.

**{¶12}** Ms. Capps "was still really upset and [she] wanted [her] daughter." Trial Transcript, Day 2, p. 11. She picked up a 2 x 4 board and started breaking out windows. Ms. Capps broke the window on the back door and entered the house through the window. However, an interior door was locked and she was not able to get further into the house. Ms. Capps exited through the back door window and resumed breaking more windows. After breaking a window on the west side of the house, Ms. Capps turned, threw the 2 x 4 board, and started to walk away. As she was walking away, Appellant shot her in the back. Ms. Capps underwent surgery to remove the BBs from her kidneys, but because of the number, doctors were unable to remove all of the BBs. She did not attack or threaten Appellant while she was breaking the windows.

**{¶13}** Steven Howard, a shooting incident and reconstruction expert and investigator, was retained by the State. As part of his investigation, Howard examined Ms. Capps's injuries and measured the size of the shotgun pellet pattern on her body. Ms. Capps was struck on the left side, just below her shoulder blade, and down to her hip. The pattern measured approximately 15 inches. According to Howard, a shot will spread out one inch for every 3 feet it travels. As such, the 15-inch pattern indicates a starting point of approximately 45 feet. Using the exact gun and ammunition, Howard opined Appellant was 40 feet, plus or minus 6 inches, from Ms. Capps when he shot her.

**{¶14}** After hearing all the evidence and deliberating, the jury found Appellant guilty of two counts of felonious assault and the attendant firearm specifications. Appellant appeared before the trial court for sentencing on June 23, 2025. The State elected to have Appellant sentenced on Count 1 of the Indictment. The trial court sentenced Appellant to an aggregate minimum term of imprisonment of six years to a maximum term of nine years.

**{¶15}** It is from his convictions and sentence Appellant appeals, raising the following assignments of error:

I. REVERSAL IS REQUIRED BECAUSE THE TRIAL COURT ONLY GAVE CAPPS TWO PEREMPTORY CHALLENGES IN A FELONY CASE, IN VIOLATION OF CRIM.R. 24 AND R.C. 2945.21.

II. CAPPS' CONVICTIONS SHOULD BE REVERSED BECAUSE HIS COUNSEL WAS PREJUDICIALLY INEFFECTIVE.

III. IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT NOT TO GIVE A DEFENSE OF RESIDENCE AND PROPERTY INSTRUCTION, EVEN IF CAPPS'S ATTORNEY DID NOT INCLUDE IT IN HIS CRIM.R. 12.2 NOTICE OF SELF-DEFENSE.

IV. IT WAS REVERISBLE ERROR FOR THE TRIAL COURT TO ALLOW THE STATE TO INTRODUCE EVIDENCE OF CAPPS' POST-ARREST SILENCE.

V. THE EVIDENCE MANIFESTLY WEIGHED AGAINST CAPP'S [SIC] CONVICTION.

VI. BECAUSE OF CUMULATIVE ERROR, CAPPS WAS DENIED HIS RIGHT TO A FAIR TRIAL.

I

**{¶16}** At oral argument, counsel for Appellant orally withdrew this assignment of error; therefore, we shall not address it.

**{¶17}** Appellant's first assignment of error is overruled.

III

{¶18} For ease of discussion, we elect to address Appellant's assignments of error out of order. In his third assignment of error, Appellant maintains the trial court erred in failing to instruct the jury on defense of residence and property despite defense counsel's failure to include such in his Crim.R. 12.2 Notice of Self-Defense.

{¶19} The trial court denied Appellant's request for the defense of residence/property instruction as Appellant failed to provide notice 30 days before trial in compliance with Crim.R. 12.2, which provides:

Whenever a defendant in a criminal case proposes to offer evidence or argue self-defense, defense of another, or defense of that person's residence, the defendant shall, not less than thirty days before trial in a felony case and fourteen days before trial in a misdemeanor case, give notice in writing of such intent. The notice shall include specific information as to any prior incidents or circumstances upon which defendant intends to offer evidence related to conduct of the alleged victim, and the names and addresses of any witnesses defendant may call at trial to offer testimony related to the defense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant related to the defense, unless the court determines that in the interest of justice such evidence should be admitted.

{¶20} Although Appellant filed a Notice of Self-Defense on October 16, 2024, he did not include notice of his intent to offer evidence or argue defense of

residence/property. The notice simply read: "Defendant will offer testimony to establish self-defense on his behalf and will prove that on or about the time of the alleged offense he was acting in self-defense or in the defense of others." October 16, 2024 Notice of Self-Defense.

{¶21} The Ohio Supreme Court has recognized "[t]he philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial." *State v. Howard*, 56 Ohio St.2d 328, 333 (1978). The discovery rules are intended to "prevent surprise and the secreting of evidence favorable to one party . . . [and] to produce a fair trial." *City of Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3 (1987). Those rules provide a range of sanctions the trial court, *in its discretion*, may impose on a noncomplying party. *Id*. at 4.

{¶22} Because Crim.R. 12.2 uses the word "shall," the notice is mandatory and because Appellant failed to give the requisite notice, we find the trial court did not abuse its discretion in enforcing Crim.R. 12.2.

{¶23} Appellant's third assignment of error is overruled.

IV

{¶24} In his fourth assignment of error, Appellant asserts the trial court erred in allowing the State to present evidence of his post-arrest silence. We agree, but find the error does not rise to the level of plain error and was harmless beyond a reasonable doubt.

{¶25} During Sergeant Wolfe's direct examination, the following exchange took place between the officer and the prosecutor:

Q. [by the Prosecutor] When you first arrived on-scene, what was your primary goal and focus?

A. [by Sergeant Wolfe] Help her get the shooter detained?

Q. So you – would you say it's to secure the crime scene?

A. Correct.

Q. Okay. That way they could get the ambulance in?

A. Uh-huh, yes. Sorry.

Q. And after that interaction that you – that we saw on there [on the video footage from the officer's body camera] with [Appellant], did you interview him any further after that?

A. No. We Mirandized him – and me and the chief deputy arrived on the scene later on [sic] Mirandized him, but he wanted a lawyer.

Tr., Day 1, pp. 210-211.

**{¶26}** Defense counsel did not object.

**{¶27}** "Failure to raise specific constitutional errors at trial forfeits all such errors on appeal except for plain error." *State v. Evans*, 2023-Ohio-2373, ¶ 18 (7th Dist.), citing *State v. Zuern*, 32 Ohio St.3d 56, 63 (1987); Crim.R. 52(B).

**{¶28}** Under Crim.R. 52(B), appellate courts have discretion to correct "[p]lain errors or defects affecting substantial rights notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *State v. Rogers*, 2015-Ohio-2459, ¶ 22. To prevail under a plain-error analysis, the appellant bears the burden of demonstrating the trial court "deviated from a legal rule," or there was "an 'obvious' defect in the proceedings" which resulted in prejudice, i.e., the outcome of the proceedings would have been different. *Id*. at ¶¶ 17-22. Courts must notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest

miscarriage of justice." *Id*. at ¶ 23. Courts must assess plain error from the whole of the trial to ascertain if the outcome was affected. *State v. Marcum*, 2022-Ohio-3576, ¶ 38 (2nd Dist.), appeal not allowed, 2023-Ohio-1830.

{**¶29**} Appellant relies on the United States Supreme Court's decision in *Doyle v. Ohio*, 426 U.S. 610 (1976), in support of his position. In *Doyle*, the United States Supreme Court held "the state, after giving a defendant Miranda warnings, cannot use the defendant's post-arrest silence as a means to impeach the defendant if he or she later decides to testify at trial." *State v. Eason*, 2003-Ohio-6279, ¶ 23 (7th Dist.), citing *Doyle* at 618. In the case at bar, Appellant did not testify; therefore, *Doyle* is inapplicable.

{**¶30**} Sergeant Wolfe was asked whether he or any other officer interviewed Appellant after the initial interaction. Sergeant Wolfe replied, "No. We Mirandized him * * * but he wanted a lawyer." Tr., Day 1, p. 211. The State did not elicit further testimony about Appellant's post-arrest silence or his request for a lawyer during the remainder of the trial.

{**¶31**} Assuming, arguendo, the prosecutor's questions or remarks were improper, "reversal is not warranted unless the conduct complained of deprived the defendant of a fair trial." *State v. Dorff*, 2023-Ohio-3424, ¶ 27 (7th Dist.), citing *State v. Fears*, 86 Ohio St.3d 329, 332 (1999). "Thus, upon reviewing the context of the entire trial, if it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments, then the comments were harmless." *Dorff* at ¶ 27, citing *State v. LaMar*, 2002-Ohio-2128, ¶ 121. "The touchstone of this analysis is the fairness of the trial, not the culpability of the prosecutor." (Internal quotations and citations omitted). *Dorff* at ¶ 27.

**{¶32}** While we find Sergeant Wolfe's response violated Appellant's constitutional right against self-incrimination, we conclude such error was harmless beyond a reasonable doubt.

**{¶33}** Appellant's fourth assignment of error is overruled.

II

**{¶34}** In his second assignment of error, Appellant contends he was denied his right to the effective assistance of counsel. We disagree.

**{¶35}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153 (1988). A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption counsel provided competent representation and must show counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 687.

**{¶36}** Trial counsel is entitled to a strong presumption all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland*, 466 U.S. at 697. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45 (1980).

**{¶37}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, (3d Dist.), ¶ 48, quoting *Bradley*, 42 Ohio St.3d at 142, citing *Strickland*, 466 U.S. at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley*, 42 Ohio St.3d at 142, citing *Strickland*, 466 U.S. at 694.

**{¶38}** Appellant submits trial counsel was ineffective due to his consistent failure to object. Specifically, trial counsel failed to object to 1) the introduction of two 9-1-1 calls played during the testimony of the Perry County Sheriff's Office dispatcher, who did not take the calls; 2) testimony regarding his post-arrest silence; 3) the State's introduction of body camera footage of interviews with witnesses who did not testify at trial; and 4) the trial court's failure to instruct the jury on defense of residence/property.

**{¶39}** We first address Appellant's contention trial counsel was ineffective for failing to object to the introduction of two 9-1-1 calls which were played during the direct examination of Perry County Sheriff's Office dispatcher Stacie Hinkle, who did not answer the 9-1-1 calls. Assuming, arguendo, trial counsel's failure to object was deficient or unreasonable, we find Appellant has failed to establish there was a reasonable probability the result of the proceeding would have been different had counsel objected. The 9-1-1 calls provided the time frame of the incident as it unfolded. The officers who responded to the calls testified regarding their actions and what they observed at the scene.

**{¶40}** Appellant also argues trial counsel was ineffective failing to object to testimony regarding his post-arrest silence. Having found in Appellant's fourth assignment of error, supra, Sergeant Wolfe's statement regarding Appellant's post-arrest silence did violate his constitutional right against self-incrimination, we find it did not

rise to the level of plain error and was harmless beyond a reasonable doubt. Accordingly, we find trial counsel was not ineffective for failing to object. See *State v. Elliott*, 2024-Ohio-3376, ¶ 148 (10th Dist.).

**{¶41}** As to Appellant's assertion trial counsel was ineffective for failing to object to the State's introduction of body camera footage of interviews with witnesses who did not testify at trial, we find two of the witnesses, Callie Baker and Ezra Dupler, did, in fact, testify and were subject to cross-examination. On cross-examination, Sergeant Wolfe was asked about statements made by Teresa Bly. Sergeant Wolfe recalled Bly stated Ms. Capps was being aggressive, had hit her in the head, and had threatened to kill her. Bly's statements support why Appellant took the action he did. Even if trial counsel was deficient in failing to make such an objection, we find Appellant has failed to show how he was prejudiced by the body camera footage of Sergeant Wolfe speaking with Bly.

**{¶42}** Appellant further contends trial counsel was ineffective for failing to object to the trial court's refusal to instruct the jury on defense of residence/property. Assuming, arguendo, counsel was deficient, we find the facts of this case did not warrant such an instruction. The record establishes Ms. Capps had thrown the 2 x 4 into the yard and was walking away from the house toward the camper when Appellant shot her. The evidence revealed Ms. Capps was shot in the back and was approximately 40 feet away from the house at the time. Even if the trial court instructed the jury on defense of residence/property, we find there is not a reasonable probability the outcome would have been different.

**{¶43}** Based upon the foregoing, we overrule Appellant's second assignment of error.

## V

{¶44} In his fifth assignment of error, Appellant challenges his conviction as against the manifest weight of the evidence.

{¶45} The term "manifest weight of the evidence" relates to persuasion. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102 n.4 (1997); *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶46} In determining whether a judgment is against the manifest weight of the evidence, an appellate court reviews the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Sitting as the "thirteenth juror," the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion. *Id*.

{¶47} When conducting a manifest weight review, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient. *Thompkins*, 78 Ohio St.3d at 387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001). Appellate courts have traditionally presumed the jury's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone,

all critical factors in evaluating credibility. *Eastley*, 2012-Ohio-2179, at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

**{¶48}** A manifest-weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." (Internal quotations omitted.) *Thompkins*, 78 Ohio St.3d at 387. To reverse a conviction on manifest-weight grounds, all three judges on the appellate panel must concur. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2-4, citing Thompkins, syllabus ¶ 4.

**{¶49}** Appellant posits the State failed to prove beyond a reasonable doubt Appellant did not act in self-defense, defense of another, or defense of residence. Appellant continues the State failed to establish Appellant was at fault in creating the situation which gave rise to the affray and failed to establish Appellant did not have reasonable grounds to believe and an honest belief, even if mistaken, he or his residence was in imminent or immediate danger of harm from Toni Capps.

**{¶50}** We find the evidence presented at trial belies Appellant's position. Appellant and Bly picked up Ms. Capps from her place of employment. On the drive home, an argument ensued between Ms. Capps and her parents. When they arrived at their residence, Ms. Capps intended to get her daughter, who was in the house, and return to their camper. Appellant and Bly would not allow Ms. Capps to see her daughter. The argument escalated. Bly punched Ms. Capps in the face, forced her to the ground, and continued to punch her in the face. Ms. Capps bit Bly in order to get Bly off of her. Ms. Capps was admittedly "still really upset and [she] wanted [her] daughter." Tr., Day 2, p. 11. She picked up a 2 x 4 board and started breaking out windows. After breaking a number of windows, Ms. Capps turned, threw the 2 x 4 board, and started to walk away.

As she was walking away, Appellant shot her in the back. She had not attacked or threatened Appellant or Bly while she was breaking the windows.

{¶51} Steven Howard, a shooting incident and reconstruction expert and investigator, examined Ms. Capps's injuries and measured the size of the shotgun pellet pattern on her body. Ms. Capps was struck on the left side, just below her shoulder blade, and down to her hip. The pattern measured approximately 15 inches. Using the exact gun and ammunition, Howard recreated the shooting and opined Appellant was 40 feet, plus or minus 6 inches, from Ms. Capps when he shot her.

{¶52} The jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. McGregor*, 2016-Ohio-3082, ¶ 10 (5th Dist.). "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." (Citations omitted.) *Id*. We find the jury did not lose its way in finding the State proved beyond a reasonable doubt Appellant did not act in self-defense, defense of another, or defense of residence. We further find the judgment of conviction was not against the manifest weight of the evidence.

{¶53} Appellant's fifth assignment of error is overruled.

VI

{¶54} In his final assignment of error, Appellant submits he was denied his right to a fair trial due to cumulative error.

{¶55} The cumulative-error doctrine provides "a trial court's judgment may be reversed if the cumulative effect of multiple errors prevents a fair trial even though each

of the individual errors, standing alone, would not constitute grounds for reversal." *Marrs v. Mickel*, 2023-Ohio-4528, ¶ 23 (8th Dist.), citing *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). That being said, "the cumulative-error doctrine does not apply in cases where there are not multiple errors." *Id.* at ¶ 24, citing *State v. Williams*, 2023-Ohio-2296, ¶ 103 (8th Dist.); *180 Degree Solutions L.L.C. v. Metron Nutraceuticals, L.L.C.*, 2021-Ohio-2769, ¶ 92 (8th Dist.). "The doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent." *Id.*, citing *State v. Jackson*, 2023-Ohio-2381, ¶ 84 (8th Dist.), quoting *State v. Allen*, 2016-Ohio-102, ¶ 53 (8th Dist.). Simply stated, "[w]hen an appellate court determines no error has occurred, the doctrine cannot apply." *State v. Lyons*, 2017-Ohio-4385, ¶ 46 (7th Dist.).

**{¶56}** The alleged cumulative errors are those raised in Appellant's second, third, fourth, and fifth assignments of error. Having found Appellant's assignments of error to be without merit in each addressed error, we similarly conclude there was no cumulative effect, which resulted in Appellant being denied a fair trial.

**{¶57}** Appellant's sixth assignment of error is overruled.

{¶58} For the reasons stated in our accompanying Opinion, the judgment of the Perry County Court of Common Pleas is affirmed.

{¶59} Costs to Appellant.


By: Hoffman, J.

King, P.J. and

Gormley, J. concur.